**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| INNOVATION FIRST, INC., <br><br>      Plaintiff, <br><br>      v. <br><br> [REDACTED] and THE INDIVIDUALS AND ENTITIES OPERATING [REDACTED], <br><br>      Defendants. | Case No. 21-cv-05510 <br><br> **Judge John Z. Lee** <br><br> **Magistrate Judge Sheila M. Finnegan** |

**AMENDED COMPLAINT**

Plaintiff Innovation First, Inc. ("IFI" or "Plaintiff") hereby brings the present action against [REDACTED] and THE INDIVIDUALS AND ENTITIES OPERATING [REDACTED] identified on Schedule A attached hereto (collectively, "Defendants") and alleges as follows:

**I. JURISDICTION AND VENUE**

1.     This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, the Copyright Act 17 U.S.C. § 501, *et seq.*, 28 U.S.C. § 1338(a)-(b) and 28 U.S.C. § 1331.

2.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through at least the fully interactive e-commerce stores[1] operating under the seller aliases identified in Schedule A attached hereto (the "Seller Aliases"). Specifically, Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States

---

[1] The e-commerce store urls are listed on Schedule A hereto under the Online Marketplaces.

consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, have sold toy products intended for children using infringing and counterfeit versions of IFI's federally registered trademarks and/or unauthorized copies of IFI's federally registered copyrighted designs (collectively, the "Unauthorized HEXBUG Products") to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused IFI substantial injury in the State of Illinois.

## II. INTRODUCTION

3.      This action has been filed by IFI to combat e-commerce store operators who trade upon IFI's reputation and goodwill by offering for sale and/or selling Unauthorized HEXBUG Products. Defendants create e-commerce stores operating under one or more Seller Aliases that are advertising, offering for sale, and selling Unauthorized HEXBUG Products to unknowing consumers, including children. Unauthorized products pose significant health and safety risks to consumers, especially for children's toys and electronics. Compounding the significant risks to consumers and children, Defendants advertise Unauthorized HEXBUG Products as baby/infant toys and pet toys. This poses significant risk to babies/infants and family pets.

4.      E-commerce stores operating under the Seller Aliases share unique identifiers, establishing a logical relationship between them and that Defendants' counterfeiting operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid and mitigate liability by operating under one or more Seller Aliases to conceal both their identities and the full scope and interworking of their operation. IFI is forced to file this action to combat Defendants' counterfeiting of its registered trademarks and infringement of its registered copyrighted designs, as well as to protect unknowing consumers from purchasing

potentially dangerous Unauthorized HEXBUG Products over the Internet, many of which are targeted at and intended for use by children. IFI has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable trademarks and infringement of its copyrighted designs as a result of Defendants' actions and seeks injunctive and monetary relief.

### III. THE PARTIES

**Plaintiff**

5.     Plaintiff is a corporation organized and existing under the laws of the State of Texas, having its principal place of business at 1519 Interstate Highway 30 W, Greenville, Texas 75402.

6.     IFI was founded on the belief that innovation is necessary very early in the design process to produce simple and elegant products. IFI has been designing, developing, and marketing electronics for autonomous mobile robots for more than twenty (20) years. Today, IFI and the IFI brand are famous around the world for pioneering and innovative designs and quality products, as the undisputed leader in designing and supplying control systems to the largest educational robotics competitions.

7.     In 2007, IFI expanded its presence in the retail toy market with the launch of the HEXBUG line of consumer mechanical and robotics toys. These toys include mechanical toys and robots that resemble bugs and creatures, buildable playsets, activity sets and battling robots (collectively, the "HEXBUG Products"). HEXBUG Products spark imagination with their innovative technology and are loved by kids and adults of all ages.

8.     HEXBUG Products have been enormously popular, driven by IFI's arduous quality standards and innovative design. Among the purchasing public, genuine HEXBUG Products are

3

instantly recognizable as such. The HEXBUG brand has come to symbolize high quality and innovation, and HEXBUG Products are renowned for their quality, performance, and reliability.

9.     Over the years, the HEXBUG Products have won numerous awards, including several Toy Industry Association Toy of the Year ("TOTY") Awards in the Specialty, Construction, and Innovation Categories, respectively, the Oppenheim Toy Portfolio's TOTY Award in 2009, the Creative Child TOTY Award in 2009, the American Specialty Toy Retailing Association's ("ASTRA") Best Toys for Kids Award in 2010, Disney's Family Fun Toy of the Year Award in 2010, the MUMSChoice Award for Top Overall Toy in 2011, Good Housekeeping's Best Toys Award in 2012, and Dr. Toy's Best Classic Products Award in 2013.

10.     Long before Defendants' acts described herein, IFI launched its line of HEXBUG Products bearing its HEXBUG mark, NANO mark, and various copyrighted designs.

11.     IFI incorporates a variety of distinctive marks in the design of its various HEXBUG Products. As a result of its long-standing use, IFI owns common law trademark rights in its trademarks. IFI has also registered its trademarks with the United States Patent and Trademark Office. HEXBUG Products typically include at least one or more of IFI's registered trademarks. IFI uses its trademarks in connection with the marketing of its HEXBUG Products, including the following marks which are collectively referred to as the "HEXBUG Trademarks."

| Registration No. | Trademark | Goods and Services |
|---|---|---|
| 3,499,757 | HEXBUG | For: robots, namely, robots with sensors for detection and navigation of the surrounding environment, for educational, hobby or personal use; robots resembling insects, namely, robots with sensors for detection and navigation of the surrounding environment, for educational, hobby or personal use in class 009.<br><br>For: toy robots in class 028. |

| Registration No. | Trademark | Goods and Services |
|---|---|---|
| 4,632,542 | HEXBUG | For: downloadable computer and mobile game software and applications in class 009. |
| 4,880,451 | HEXBUG | For: online retail store services featuring consumer goods in class 035. |
| 4,209,506 | HEX | For: toys and playsets, namely, mechanical action toys in the nature of creatures, vehicles, tracks, mechanisms, and parts thereof in class 028. |
| 3,979,170 |  | For: robots for personal, educational and hobby use and structural parts therefor; kits for constructing robots, namely, chassis, framework, gears, treads, spokes, motors, batteries, microcontrollers, transmitters and receivers; computer programs for designing and remotely controlling motorized toys; computer hardware and computer peripherals in class 009.<br><br>For: toy robots; toy robot building kits in class 028. |
| 4,272,573 |  | For: educational services, namely, arranging live and online seminars, workshops and classes, all in the field of robotics and electronics; entertainment services, namely, organizing exhibitions, competitions and conducting contests and games in the field of robots; electronic publishing services, namely, publication of text and graphic works of others on CDs and online in the field of robotics; publication of books and magazines in class 041.<br><br>For: technical consultation in the field of robotics design and engineering; consulting services in the field of design, selection, implementation and use of computer hardware and software systems for others in class 042. |
| 3,945,970 | INNOVATION FIRST INTERNATIONAL | For: robots for personal, educational and hobby use and structural parts therefor; kits for constructing robots, namely, chassis, framework, gears, treads, spokes, motors, batteries, microcontrollers, transmitters and receivers; computer programs for designing and remotely controlling motorized toys; |

| Registration No. | Trademark | Goods and Services |
|---|---|---|
| | | computer hardware and computer peripherals in class 009.<br><br>For: toy robots; toy robot building kits, namely, chassis, framework, gears, treads, spokes, motors, batteries, microcontrollers, transmitters and receivers in class 028. |
| 4,292,600 | INNOVATION FIRST INTERNATIONAL | For: educational services, namely, arranging live and online seminars, workshops and classes, all in the field of robotics and electronics; entertainment services, namely, organizing exhibitions, competitions and conducting contests and games in the field of robots in class 041.<br><br>For: technical consultation in the field of robotics design and engineering; consulting services in the field of design, selection, implementation and use of computer hardware and software systems for others in class 042. |
| 3,992,344 | NANO | For: robots, namely, robots with sensors for detection and navigation of the surrounding environment, for educational, hobby or personal use; robots resembling insects, namely, robots with sensors for detection and navigation of the surrounding environment, for educational, hobby or personal use, all aforementioned goods except for humanoid robots in class 009.<br><br>For: toy robots; toy barriers; toy building structures; and toy vehicle tracks, all aforementioned goods except for humanoid robots in class 028. |
| 3,994,012 |  | For: mechanical toys, namely, mechanical insects in class 028. |

| Registration No. | Trademark | Goods and Services |
|---|---|---|
| 4,120,764 |  | For: toys and playsets, namely, mechanical creatures and mechanical vehicles, barriers, obstacles, tracks, building sets, structures, and parts thereof in class 028. |
| 4,120,765 |  | For: toys and playsets, namely, mechanical creatures and mechanical vehicles, barriers, obstacles, tracks, building sets, structures, containment structures, mechanisms, and parts thereof in class 028. |
| 4,208,947 |  | For: toys and playthings, namely, toy figures in class 028. |
| 4,504,443 |  | For: toys, games and playthings, namely, mechanical action toys in class 028. |
| 4,008,391 | ANT | For: robots, namely, robots with sensors for detection and navigation of the surrounding environment, for educational, hobby or personal use; robots resembling insects, namely, robots with sensors for detection and navigation of the surrounding environment, for educational, hobby or personal use in class 009. |
| 4,791,061 | AQUABOT | For: toys, games and playthings, namely, mechanical action toys in class 028. |
| 4,123,143 | I-INSECT | For: toys, namely, mechanical creatures and mechanical vehicles, play sets for mechanical toys and parts thereof comprised of toy traffic barriers, toy traffic cone obstacles, vehicle tracks, toy building sets comprised of structures and vehicle tracks, toy building structures, and parts thereof in class 028. |
| 3,914,145 | INCHWORM | For: robots, namely, robots with sensors for detection and navigation of the surrounding environment, for |

| Registration No. | Trademark | Goods and Services |
|---|---|---|
| | | educational, hobby or personal use; robots resembling insects, namely, robots with sensors for detection and navigation of the surrounding environment, for educational, hobby or personal use in class 009.<br><br>For: toy robots in class 028. |
| 4,123,126 | LARVA | For: toys, namely, mechanical creatures and mechanical vehicles, play sets for mechanical toys and parts thereof comprised of toy traffic barriers, toy traffic cone obstacles, vehicle tracks, toy building sets comprised of structures and vehicle tracks, toy building structures, and parts thereof in class 028. |
| 4,274,120 | MICRO ROBOTIC CREATURES | For: toys, namely, toy animals and accessories therefor in class 028. |
| 4,786,074 | MICRO-INSECT | For: toys, namely, mechanical creatures and mechanical vehicles, barriers, obstacles, tracks, playsets, building sets, structures, and parts thereof in class 028. |
| 6,022,222 | CLAWBOT | For: Educational teaching apparatus used as teaching aids for learning robotics and computer programming, namely, kits for building robots composed of electrical and mechanical components in the nature of programmable micro controllers, sensor arrays, motors, batteries, cables and chargers, including software for designing, operating and programming said robots; teaching robots in class 009.<br><br>For: toy robots; toy robot building kits in class 028. |

12.     The above U.S. registrations for the HEXBUG Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065.  The HEXBUG Trademarks have been used exclusively and continuously by IFI for many years and have never been abandoned.  The registrations for the HEXBUG Trademarks constitute *prima facie* evidence

of their validity and of IFI's exclusive right to use the HEXBUG Trademarks pursuant to 15 U.S.C. § 1057(b). True and correct copies of the federal trademark registration certificates for the above HEXBUG Trademarks are attached hereto as **Exhibit 1**.

13. IFI has registered many of its designs with the United States Copyright Office (collectively, the "Hexbug Copyrighted Designs"), including the following:

| U.S. Copyright Registration No. | Work Title | Issue Date |
|---|---|---|
| VA 1-713-591 | "HEXBUG NANO" | May 7, 2010 |
| VA 1-792-336 | "I-INSECT COCCOON TOY" | November 2, 2011 |
| VA 1-791-968 | "I-INSECT TOY" | October 27, 2011 |
| VA 1-751-372 | "NANO COCCOON INSECT TOY" | November 29, 2010 |

True and correct copies of the U.S. federal copyright registration certificates and U.S. Copyright Office registration information for the above-referenced Hexbug Copyrighted Designs are attached hereto as **Exhibit 2**.

14. Among the exclusive rights granted to IFI under the U.S. Copyright Act are the exclusive rights to reproduce, prepare derivative works of, distribute copies of, and display the Hexbug Copyrighted Designs to the public.

15. The HEXBUG Trademarks and Hexbug Copyrighted Designs are exclusive to IFI, and are displayed extensively on HEXBUG Products, packaging and in IFI's marketing and promotional materials. The HEXBUG brand has long been among the most popular consumer toy lines in the world and has been extensively promoted and advertised at great expense. In fact, IFI has expended millions of dollars annually in advertising, promoting and marketing featuring the HEXBUG Trademarks and/or Hexbug Copyrighted Designs. HEXBUG products have also been the subject of extensive unsolicited publicity resulting from their high quality and innovative designs. Because of these and other factors, the IFI name and the HEXBUG Trademarks have become famous throughout the United States and worldwide.

16. The HEXBUG Trademarks are distinctive when applied to the HEXBUG Products, signifying to the purchaser that the products come from IFI and are manufactured to IFI's quality standards. The HEXBUG Trademarks have achieved tremendous fame and recognition, which has only added to the distinctiveness of the marks. As such, the goodwill associated with the HEXBUG Trademarks is of incalculable and inestimable value to IFI.

17. IFI is the exclusive holder of several U.S. patents for its HEXBUG Products. For example, IFI owns U.S. Patent No. 8,038,503, titled "VIBRATION POWERED TOY." IFI also holds numerous other U.S. patents, including patents covering various components of the HEXBUG Products and the HEXBUG Products themselves. These patents and the components that they cover are intrinsically and directly linked to the goodwill of the HEXBUG Trademarks and the HEXBUG brand, because of the innovation, quality and care IFI has imbued in both the design and manufacture of the HEXBUG Products.

18. For many years, IFI has operated an e-commerce website where it promotes and sells genuine HEXBUG Products at hexbug.com. Sales of HEXBUG Products via the hexbug.com website represent a significant portion of IFI's business. The hexbug.com website features proprietary content, images and designs exclusive to IFI.

19. IFI's innovative marketing and product designs have enabled IFI to achieve widespread recognition and fame and have made the HEXBUG Trademarks some of the most well-known marks in the consumer toy industry. The widespread fame, outstanding reputation, and significant goodwill associated with the HEXBUG brand have made the HEXBUG Trademarks valuable assets of IFI.

20. IFI has expended substantial time, money, and other resources in developing, advertising and otherwise promoting the HEXBUG Trademarks and Hexbug Copyrighted

10

Designs. As a result, products bearing the HEXBUG Trademarks and/or Hexbug Copyrighted Designs are widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality products sourced from IFI. IFI is a multi-million-dollar operation, and HEXBUG Products have become among the most popular toys of their kind in the world.

**The Defendants**

21.     Defendants are individuals and business entities of unknown makeup who own and/or operate one or more of the e-commerce stores under at least the Seller Aliases identified on Schedule A and/or other seller aliases not yet known to IFI. On information and belief, Defendants reside and/or operate in the People's Republic of China or other foreign jurisdictions with lax trademark enforcement systems, or redistribute products from the same or similar sources in those locations. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

22.     On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed in Schedule A attached hereto. Tactics used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for IFI to learn Defendants' true identities and the exact interworking of their counterfeit network. If Defendants provide additional credible information regarding their identities, IFI will take appropriate steps to amend the Amended Complaint.

### IV. DEFENDANTS' UNLAWFUL CONDUCT

23.     The success of the HEXBUG brand has resulted in its significant counterfeiting. Consequently, IFI has a worldwide brand protection program and regularly investigates suspicious e-commerce stores identified in proactive Internet sweeps and reported by consumers. In recent years, IFI has identified numerous fully interactive e-commerce stores, including those

operating under the Seller Aliases, which were offering for sale and/or selling Unauthorized

HEXBUG Products[2] to consumers in this Judicial District and throughout the United States. E-

commerce sales, including through e-commerce stores like those of Defendants, have resulted in

a sharp increase in the shipment of unauthorized products into the United States. **Exhibit 3**,

Excerpts from Fiscal Year 2018 U.S. Customs and Border Protection ("CBP") Intellectual

Property Seizure Statistics Report. Over 90% of all CBP intellectual property seizures were

smaller international mail and express shipments (as opposed to large shipping containers). *Id*.

Over 85% of CBP seizures originated from mainland China and Hong Kong. *Id*. Counterfeit and

pirated products account for billions in economic losses, resulting in tens of thousands of lost jobs

for legitimate businesses and broader economic losses, including lost tax revenue.

24. Counterfeits pose significant health and safety risks to consumers, especially for

children's toys and electronics. Compounding the significant health and safety risks to consumers

and particularly to children, Defendants advertise Unauthorized HEXBUG Products as

baby/infant toys and pet toys. This poses significant risk to babies/infants and family pets. *See*

Report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S.

Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020),

attached as **Exhibit 4,** at 17–18 (discussing an investigation by the Government Accountability

Office which found a 99 percent failure rate in testing counterfeit adapters for safety, fire, and

shock hazards, with some of the adapters posing a risk of lethal electrocution to the user). These

health and safety risks are exacerbated with products marketed for children, such as the

---

[2] Although IFI is only asserting violations of its trademark rights in this action, it should be noted that Defendants' Unauthorized HEXBUG Products also infringe various U.S. patents owned by IFI, which further causes confusion, mistake, and deception by and among consumers and is irreparably harming IFI's HEXBUG brand.

Unauthorized HEXBUG Products. *See id.* at 18 (discussing a CBP seizure of 1,378 hover boards with counterfeit batteries, which can cause fires resulting in injury or death).

25.     Third party service providers like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms." **Exhibit 5**, Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 NW. J. INT'L L. & BUS. 157, 186 (2020); *see also* **Exhibit 4** (finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and recommending that "[s]ignificantly enhanced vetting of third-party sellers" is necessary). Counterfeiters hedge against the risk of being caught and having their websites taken down from an e-commerce platform by preemptively establishing multiple virtual store-fronts. **Exhibit 4** at p. 22. Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, counterfeiters can have many different profiles that can appear unrelated even though they are commonly owned and operated. **Exhibit 4** at p. 39. Further, "E-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters." **Exhibit 5** at 186–187.

26.     Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, have sold Unauthorized HEXBUG Products to residents of Illinois.

27.     Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies. For example, Defendants facilitate sales by designing the e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be

authorized online retailers, outlet stores, or wholesalers. E-commerce stores operating under the Seller Aliases look sophisticated and accept payment in U.S. dollars via credit cards, Alipay, Amazon Pay, and/or PayPal. E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer. IFI has not licensed or authorized Defendants to use any of the HEXBUG Trademarks or to copy or distribute the Hexbug Copyrighted Designs, and none of the Defendants are authorized retailers of genuine HEXBUG Products.

28.     Many Defendants also deceive unknowing consumers by using the HEXBUG Trademarks without authorization within the content, text, and/or meta tags of their e-commerce stores to attract various search engines crawling the Internet looking for websites relevant to consumer searches for HEXBUG Products. Other e-commerce stores operating under the Seller Aliases omit using HEXBUG Trademarks in the item title to evade enforcement efforts, while using strategic item titles and descriptions that will trigger their listings when consumers are searching for HEXBUG Products.

29.     E-commerce store operators like Defendants commonly engage in fraudulent conduct when registering the Seller Aliases by providing false, misleading and/or incomplete information to e-commerce platforms to prevent discovery of their true identities and the scope of their e-commerce operation.

30.     E-commerce store operators like Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Unauthorized HEXBUG Products. Such seller alias registration patterns are one of many common tactics used by e-commerce store operators like Defendants to conceal their identities and the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

31.    Even though Defendants operate under multiple fictitious aliases, the e-commerce stores operating under the Seller Aliases often share unique identifiers, such as templates with common design elements that intentionally omit any contact information or other information for identifying Defendants or other Seller Aliases they operate or use.  E-commerce stores operating under the Seller Aliases include other notable common features such as use of the same registration patterns, accepted payment methods, check-out methods, keywords, advertising tactics, similarities in prices and quantities, the same incorrect grammar and misspellings, and/or the use of the same text and images.  Additionally, Unauthorized HEXBUG Products for sale by the Seller Aliases bear similar irregularities and indicia of being counterfeit to one another, suggesting that the Unauthorized HEXBUG Products were manufactured by and come from a common source and that Defendants are interrelated.

32.    E-commerce store operators like Defendants are in constant communication with each other and regularly participate in QQ.com chat rooms and through websites such as sellerdefense.cn, kaidianyo.com and kuajingvs.com regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

33.    Counterfeiters such as Defendants typically operate under multiple seller aliases and payment accounts so that they can continue operation in spite of IFI's enforcement.  E-commerce store operators like Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts to off-shore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to IFI.  Indeed, analysis of financial account transaction logs from previous similar cases indicates that off-shore counterfeiters regularly move funds from U.S. based financial accounts to off-shore accounts outside the jurisdiction of this Court.

34.     Defendants are working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Unauthorized HEXBUG Products in the same transaction, occurrence, or series of transactions or occurrences.  Defendants, without any authorization or license from IFI, have jointly and severally, knowingly and willfully used and continue to use the HEXBUG Trademarks and/or the Hexbug Copyrighted Designs in connection with the advertisement, distribution, offering for sale, and sale of Unauthorized HEXBUG Products into the United States and Illinois over the Internet.

35.     Defendants' unauthorized use of the HEXBUG Trademarks and/or copies of the Hexbug Copyrighted Designs in connection with the advertising, distribution, offering for sale, and sale of Unauthorized HEXBUG Products, including the sale of Unauthorized HEXBUG Products into the United States, including Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming IFI.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

36.     IFI hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

37.     This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the federally registered HEXBUG Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods.  The HEXBUG Trademarks are highly distinctive marks.  Consumers have come to expect the highest quality from HEXBUG Products sold or marketed under the HEXBUG Trademarks.

38.     Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products using counterfeit reproductions of the HEXBUG Trademarks without IFI's permission.

39.     IFI is the exclusive owner of the HEXBUG Trademarks. IFI's United States Registrations for the HEXBUG Trademarks (Exhibit 1) are in full force and effect. Upon information and belief, Defendants have knowledge of IFI's rights in the HEXBUG Trademarks, and are willfully infringing and intentionally using counterfeits of the HEXBUG Trademarks. Defendants' willful, intentional and unauthorized use of the HEXBUG Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Unauthorized HEXBUG Products among the general public.

40.     Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

41.     IFI has no adequate remedy at law, and if Defendants' actions are not enjoined, IFI will continue to suffer irreparable harm to its reputation and the goodwill of its well-known HEXBUG Trademarks.

42.     The injuries and damages sustained by IFI have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Unauthorized HEXBUG Products.

**COUNT II**
**FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))**

43.     IFI hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

44.     Defendants' promotion, marketing, offering for sale, and sale of Unauthorized HEXBUG Products has created and is creating a likelihood of confusion, mistake, and deception

among the general public as to the affiliation, connection, or association with IFI or the origin, sponsorship, or approval of Defendants' Unauthorized HEXBUG Products by IFI.

45.     By using the HEXBUG Trademarks in connection with the sale of Unauthorized HEXBUG Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Unauthorized HEXBUG Products.

46.     Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Unauthorized HEXBUG Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

47.     IFI has no adequate remedy at law and, if Defendants' actions are not enjoined, IFI will continue to suffer irreparable harm to its reputation and the goodwill of its HEXBUG brand.

**COUNT III**
**COPYRIGHT INFRINGEMENT OF UNITED STATES COPYRIGHT**
**REGISTRATIONS (17 U.S.C. §§ 106 AND 501)**

48.     IFI hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

49.     IFI is the owner of valid and enforceable Hexbug Copyrighted Designs, which contain certain copyrightable subject matter under 17 U.S.C. §§ 101, *et seq.*

50.     IFI has complied with the registration requirements of 17 U.S.C. § 411(a) for the Hexbug Copyrighted Designs and has obtained Copyright Registration Nos. VA 1-713-591, VA 1-791-968, VA 1-792-336, and VA 1-751-372 for the Hexbug Copyrighted Designs.

51.     Defendants do not have any ownership interest in the Hexbug Copyrighted Designs. Defendants had access to the Hexbug Copyrighted Designs via the internet.

52.     Without authorization from Plaintiff, or any right under the law, Defendants have deliberately copied, displayed, distributed, reproduced and/or made derivate works incorporating

the Hexbug Copyrighted Designs on the e-commerce stores operating under the Seller Aliases and the corresponding Unauthorized HEXBUG Products. Defendants' derivative works are virtually identical to and/or are substantially similar to the look and feel of the Hexbug Copyrighted Designs. Such conduct infringes and continues to infringe the Hexbug Copyrighted Designs in violation of 17 U.S.C. § 501(a) and 17 U.S.C. §§ 106(1)–(3), (5).

53. Defendants reap the benefits of the unauthorized copying and distribution of the Hexbug Copyrighted Designs in the form of revenue and other profits that are driven by the sale of Unauthorized HEXBUG Products.

54. Defendants have unlawfully appropriated IFI's protectable expression by taking material of substance and value and creating Unauthorized HEXBUG Products that capture the total concept and feel of the Hexbug Copyrighted Designs.

55. On information and belief, Defendants' infringement has been willful, intentional, and purposeful, and in disregard of and with indifference to IFI's rights.

56. Defendants, by their actions, have damaged IFI in an amount to be determined at trial.

57. Defendants' conduct is causing, and unless enjoined and restrained by this Court will continue to cause, IFI great and irreparable injury that cannot fully be compensated or measured in money. IFI has no adequate remedy at law. Pursuant to 17 U.S.C. § 502, IFI is entitled to a preliminary and permanent injunction prohibiting further infringement of the Hexbug Copyrighted Designs.

## PRAYER FOR RELIEF

WHEREFORE, IFI prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

   a. using the HEXBUG Trademarks or any reproductions, counterfeit copies or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine HEXBUG Product or is not authorized by IFI to be sold in connection with the HEXBUG Trademarks;

   b. reproducing, distributing copies of, making derivative works of, or publicly displaying the Hexbug Copyrighted Designs in any manner without the express authorization of IFI;

   c. passing off, inducing, or enabling others to sell or pass off any product as a genuine HEXBUG Product or any other product produced by IFI, that is not IFI's or not produced under the authorization, control, or supervision of IFI and approved by IFI for sale under the HEXBUG Trademarks and/or the Hexbug Copyrighted Designs;

   d. committing any acts calculated to cause consumers to believe that Defendants' Unauthorized HEXBUG Products are those sold under the authorization, control or supervision of IFI, or are sponsored by, approved by, or otherwise connected with IFI;

   e. further infringing the HEXBUG Trademarks and/or the Hexbug Copyrighted Designs and damaging IFI's goodwill; and

   f. manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for IFI, nor authorized by IFI to be sold or offered

20

for sale, and which bear any of IFI's trademarks, including the HEXBUG Trademarks, or any reproductions, counterfeit copies or colorable imitations thereof and/or which bear the Hexbug Copyrighted Designs;

2) Entry of an Order that, upon IFI's request, those with notice of the injunction, including, without limitation, any online marketplace platforms such as eBay, AliExpress, Alibaba, Amazon, Wish.com and Dhgate (collectively, the "Third Party Providers") shall disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using the HEXBUG Trademarks and/or which bear the Hexbug Copyrighted Designs;

3) That Defendants account for and pay to IFI all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the HEXBUG Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

4) In the alternative, that IFI be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the HEXBUG Trademarks;

5) As a direct and proximate result of Defendants' infringement of the Hexbug Copyrighted Designs, IFI is entitled to damages as well as Defendants' profits, pursuant to 17 U.S.C. § 504(b);

6) Alternatively, and at IFI's election prior to any final judgment being entered, IFI is entitled to the maximum amount of statutory damages provided by law, $150,000 per work infringed pursuant to 17 U.S.C. § 504(c), or for any other such amount as may be proper pursuant to 17 U.S.C. § 504(c);

7) IFI is further entitled to recover its attorneys' fees and full costs for bringing this action pursuant to 17 U.S.C. § 505 and 17 U.S.C. § 1117(a); and

8) Award any and all other relief that this Court deems just and proper.

Dated this 19th day of October 2021.      Respectfully submitted,

/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
Jake M. Christensen
Thomas J. Juettner
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080 / 312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
jchristensen@gbc.law
tjjuettner@gbc.law

*Counsel for Plaintiff Innovation First, Inc.*